The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Form 21 agreement approved by the Commission on December 6, 1988, at the hearing, and in a prior Opinion and Award by former Deputy Commissioner Gregory M. Willis, filed October 16, 1991, as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over this matter.
2. The plaintiff was the employee of the defendant-employer at the time in question.
3. Employee-plaintiff suffered a compensable injury by accident when he was crushed between the doors of an aircraft hangar on October 24, 1988 and was paid compensation pursuant to a Form 21 Agreement approved by the Industrial Commission on December 6, 1988.
4. Employee-plaintiff returned to work on December 11, 1989.
5. The parties entered in a Form 26 Agreement, which was approved by the Industrial Commission, in which employee-plaintiff was paid additional temporary total disability benefits from March 20, 1991 to April 7, 1991.
6. Employee-plaintiff's average weekly wage is $560.40, yielding a compensation rate of $356.00.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff suffered a compensable injury by accident on October 24, 1988 when his body was caught between the airline's hangar doors. As a result, he suffers from numerous physical and psychiatric conditions that at times have been disabling and have required medical treatment. These physical and psychiatric conditions include headaches, post-traumatic stress disorder and depression.
2. In 1989, plaintiff was treated and evaluated by Dr. Edwin Harris, who found plaintiff to be severely depressed as a result of his accident of October 24, 1988. In the same year, plaintiff was seen by Dr. Frank Daly, a psychiatrist, who found plaintiff to be suffering from post-traumatic stress disorder and panic attacks, and who recommended a gradual exposure to hangar doors, instead of the abrupt reintroduction that plaintiff actually experienced in late 1991.
3. After his compensable injury, plaintiff missed approximately 14 months of work, then returned to work for the defendant-employer in line maintenance. The job duties in line maintenance involve maintenance and repair of aircraft in the outdoors, near the terminal building at the airport. The area in which plaintiff was working was completely across the airport from the hangar, a distance of approximately one-half mile.
4. Plaintiff was generally able to work in line maintenance from December 11, 1989 until March of 1991, at which time another airline employee was killed. Plaintiff was so affected psychologically by this incident that he was unable to work for approximately five weeks. His treating psychiatrist at the time, Dr. V. Alan Lombardi, authorized plaintiff to be out of work, and the defendants paid compensation for temporary total disability without dispute.
5. After returning to work following the incident in March of 1991, plaintiff was again generally able to work in line maintenance. Throughout the time that he was back at work with defendant-employer, plaintiff missed occasional time from work due to his injuries.
6. During April 1990, plaintiff began treating with Dr. Kathryn Coughlin-Kelley, a neurologist. At the time, plaintiff presented with headaches, vertigo, dizziness, and changes in his behavior. Plaintiff was also suffering from memory loss. In Dr. Coughlin-Kelley's opinion, plaintiff's medical condition was due to post-traumatic headache disorder and post-traumatic stress disorder, which were causally related to his admittedly compensable injury by accident.
7. Dr. Coughlin-Kelley referred plaintiff to several other specialists. In the course of those referrals, Dr. Michael Mallonee, an ear, nose and throat specialist, stated that plaintiff's headaches were not related to his compensable injury. Shortly thereafter, the defendants withdrew authorization for any treatment for plaintiff's headaches.
8. During the course of the proceeding before former Deputy Commissioner Gregory M. Willis, held solely on the issue of compensability of medical treatment, Dr. Mallonee abandoned his prior opinion. Deputy Commissioner Willis filed his Opinion and Award on October 16, 1991, ordering the defendants to pay for all medical treatment prior to the filing of his Opinion and Award, including the services rendered by Dr. Coughlin-Kelley and those physicians to whom she referred plaintiff.
9. Upon referral of Dr. Coughlin-Kelley, plaintiff was seen by Dr. Ervin Batchelor in February and March of 1991. As a result of tests administered by Dr. Batchelor, plaintiff was found to have some mild brain dysfunction, including a decline in plaintiff's cognitive potential and the development of post-traumatic stress disorder. Plaintiff also exhibited problems with attention and encoding information. All of these conditions are causally related to plaintiff's compensable injury by accident of October 24, 1988.
10. Dr. Batchelor recommended cognitive rehabilitation and group therapy for individuals who had been traumatized and vocational services to train plaintiff for another job. In Dr. Batchelor's opinion, considering plaintiff's traumatization and resulting conditions, working in an airline hangar would be inappropriate.
11. In June of 1991, plaintiff was seen by Dr. Maxwell Greenman, an ophthalmologist, at which time plaintiff complained of headaches and exotropia ("double vision" or "wandering eye"). Dr. Greenman noted that plaintiff had a prior history of intermittent exotropia and headaches but that these conditions had worsened since the accident of October 24, 1988. Plaintiff continued treating with Dr. Greenman until June of 1993, and during such time, plaintiff would have had difficulty in performing fine mechanical work on aircraft due to his eye condition.
12. On August 5, 1991, plaintiff was moved from the line maintenance job to one in the seat shop, located inside the aircraft hangar. Due to his post-traumatic stress syndrome, plaintiff immediately felt uncomfortable working inside the hangar, within sight and sound of the hangar doors. About one week later, Dr. Lombardi changed one of plaintiff's medications, causing a negative reaction that resulted in plaintiff's missing a couple of days of work. Dr. Lombardi changed the medication back to the previous one, and plaintiff returned to work.
13. Approximately one week following his return to work, plaintiff was shifted into the sheet metal shop, also located inside the hangar. For the next few weeks, plaintiff was in and out of work with headaches and anxiety problems. On September 29, 1991, plaintiff "bid" into a position in line maintenance, despite the necessity that he work on a midnight shift. Plaintiff made this change in positions because of his psychological inability to tolerate working inside the hangar.
14. Plaintiff was able to continue working, with some interruptions, in line maintenance until November 4, 1991, when he was "bumped" back into the sheet metal shop, located inside the hangar. Thereafter, he worked only on November 24 and December 4 and 22, 1991. Since that time, plaintiff has not worked for defendant-employer. Defendants have paid no compensation to plaintiff since April 1991.
15. Pursuant to Deputy Commissioner Willis' Opinion and Award filed October 16, 1991, Dr. Lombardi was designated as the primary treating physician and director of all medical treatment for plaintiff. Dr. Lombardi, however, refused to accept this responsibility.
16. After the filing of the above-mentioned Opinion and Award, plaintiff's relationship with Dr. Lombardi significantly deteriorated. After being bumped back into the sheet metal shop in the hanger, plaintiff requested an out of work excuse from Dr. Lombardi, but Dr. Lombardi refused to accommodate plaintiff on his request.
17. A few weeks later, Dr. Lombardi formally terminated his relationship with plaintiff and refused to refer plaintiff to any other medical care provider. As a result of Dr. Lombardi's refusal to render services as plaintiff's primary care physician, his refusal to refer plaintiff for treatment, and the defendants' refusal to pay for any further medical treatment, plaintiff has been severely limited in his ability to obtain medical care.
18. Little weight is given to Dr. Lombardi's opinion that plaintiff does not need medical care. This particular opinion is in direct conflict with his own testimony in his first deposition on August 29, 1991, wherein he testified that he expected to see plaintiff every two weeks for another four to five months. In his second deposition of November 26, 1991, Dr. Lombardi testified that plaintiff needed no medical treatment at all. Also, in the first deposition, Dr. Lombardi testified about on-going adjustment of medication for plaintiff, while in the second deposition, he indicated that plaintiff needed no medication. Finally, in the second deposition, Dr. Lombardi testified that plaintiff did not need medication for headaches, despite his own acknowledgment that such medications were outside his field of expertise.
19. Greater weight is given to Dr. Wheeler's testimony, a neurologist who treated plaintiff, and opined that plaintiff would in fact need medication for his headaches. The headaches suffered by plaintiff resulted from and are causally related to his compensable injury by accident of October 24, 1988.
20. Dr. Lombardi's testimony is of limited relevance as to whether plaintiff was disabled after he started missing work in late 1991, because Dr. Lombardi did not have any contact with plaintiff after terminating treatment on or before November 26, 1991. To the extent that Dr. Lombardi had any opinions concerning disability thereafter, they are of little weight, in light of Dr. Lombardi's hostility towards plaintiff and his medical treatment after October 1991.
21. The greater weight of the evidence, in the form of testimony from doctors, as well as plaintiff's and other lay testimony, establishes that plaintiff became disabled as a result of his psychological inability to perform his work on November 4, 1991. He has continued to be totally disabled since that date, with the exception of November 24 and December 4 and 22, 1991.
22. Plaintiff's continuing temporary total disability is further supported by testimony of Dr. J. Harmon Cook, a psychiatrist from Miami, Florida, who has followed plaintiff since shortly after his accident, that plaintiff's condition has deteriorated since Dr. Lombardi discharged plaintiff as a patient and that plaintiff is unable to do any kind of work. The fact that plaintiff actually worked for almost two years after returning to work from his injury and tried to come back on three separate days after he became disabled in late 1991; and that plaintiff was described as eager to return to work by Dr. Daly, who was treating him during the initial stages of the process of returning to work.
23. Plaintiff's activities in doing yard work and the money he received for such work did not generate any profit or wage to plaintiff and do not indicate that plaintiff has regained the capacity to earn the same or greater wages than he received prior to the compensable injury.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Since November 4, 1991, plaintiff has undergone a substantial change for the worse in his condition. N.C. Gen. Stat. § 97-47.
2. As a result of plaintiff's substantial change for the worse in his condition, plaintiff is entitled to temporary total disability compensation at the rate of $356.00 per week from November 4, 1991, and continuing, with the exception of November 24, December 4, and December 22, 1991, until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to the payment by defendant of all medical expenses incurred, or to be incurred, as a result of the compensable injury by accident of October 24, 1988 and his change of condition. N.C. Gen. Stat. § 97-25.
4. Plaintiff is entitled to an attorney's fee assessed against defendant in the amount of $2,000. N.C. Gen. Stat. § 97-88.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation for temporary total disability at the rate of $356.00 per week from November 4, 1991, and continuing, with the exception of November 24, December 4, and December 22, 1991, until further Order of the Industrial Commission. Amounts which have accrued shall be paid to plaintiff in a lump sum, subject to the attorney fee approved in paragraph 3.
2. Defendants shall pay all medical expenses incurred, or to be incurred, as a result of his compensable injury by accident of October 24, 1988 and his change of condition.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: 25% of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth check will be paid directly to plaintiff's attorney.
4. Defendants shall pay an attorney fee of $2,000 to Mr. Gervasi as part of the cost of this appeal.
5. Defendants shall pay the costs of this appeal.
 ORDER
Plaintiff is HEREBY ORDERED to accept and cooperate with the medical treatment and rehabilitation efforts. This file is hereby assigned to the nurses' section of the Industrial Commission to coordinate medical treatment and for designation of a primary treating physician if the parties are unable to agree on medical care.
This is the 20th day of January, 1998.
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ DOUGLAS BERGER DEPUTY COMMISSIONER